**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0981-16T1

CESAR ASIJTUJ-JUTZUY,

    Plaintiff-Appellant,

v.

WERNER, CO. and M. SIKORSKI
CONSTRUCTION SALES,

    Defendants-Respondents,

and

B&S RESTORATION, INC.,

    Defendant.

_____

Submitted February 28, 2018 – Decided September 5, 2018

Before Judges Nugent and Geiger.

On appeal from Superior Court of New Jersey,
Law Division, Hudson County, Docket No. L-
0948-14.

Ginarte Gallardo González & Winograd, LLP,
attorneys for appellant (Richard M. Winograd,
on the briefs).

Michael J. Dunn, attorney for respondent
Werner Co.

Zirulnik, Sherlock & Demille, attorneys for respondent M. Sikorski Construction Sales (Joseph E. Kelley, on the brief).

PER CURIAM

Plaintiff, Cesar Asijtuj-Jutzuy, a former construction worker, appeals the summary judgment dismissal of his personal injury action, a lawsuit he filed to recover damages for permanent debilitating injuries he suffered when he fell eleven or twelve feet from a scaffold plank. The trial court dismissed plaintiff's negligence claim against defendant M. Sikorski Construction Sales (Sikorski Construction), finding plaintiff presented no proofs that Sikorski Construction had any involvement with the construction project where plaintiff's accident occurred. The trial court later dismissed plaintiff's failure-to-warn product liability claim against defendant Werner Co., determining there was no duty to warn of an obvious danger. Genuinely disputed issues of material fact precluded summary judgment on the negligence claim but not on the product liability claim. We thus affirm in part and reverse in part.

Plaintiff filed his personal injury action in March 2014, alleging he sustained disabling injuries on March 16, 2012, when he fell from a scaffolding plank at a construction site. The complaint alleged Sikorski Construction was responsible for oversight of the entire project and was acting as a general

contractor. As such, according to the complaint, Sikorski Construction breached its duty to plaintiff by failing to provide a reasonably safe place to work. The complaint also alleged Sikorski Construction "created, permitted, and maintained a dangerous and hazardous condition at the site."

The complaint against Werner alleged that Werner designed, manufactured, and sold the aluminum scaffold plank from which plaintiff fell. The complaint also alleged that the scaffolding plank was defectively designed and manufactured, and was defective because of its failure to include adequate "cautionary labelling devices, and instructional information and materials at the time it was placed into the stream of commerce."

Following completion of discovery, Sikorski construction moved for summary judgment. The trial court granted the motion. Thereafter, Werner moved for summary judgment, and the court granted the motion as to the product claim based on inadequate warnings but denied it as to defective design. Plaintiff moved for reconsideration of the order granting summary judgment to Werner. The trial court denied the motion. Plaintiff dismissed his defective design claim against Werner and filed this appeal.

According to the pleadings and the discovery submitted in support of and opposition to the summary judgment motions, these are the undisputed facts concerning the accident. Plaintiff was

3

an employee of C. Bossolina Construction, Inc. (Bossolina Construction). Bossolina Construction had contracted to do masonry repairs to the front and rear facades of the Mayfair Condominium in North Bergen Township (the Project). Plaintiff explained in an interrogatory how the accident occurred:

> On March 16, 2012, at about 1:00 p.m., plaintiff was standing on an aluminum work platform manufactured by [Werner Co.], which was positioned at a height of approximately [eleven] to [twelve] feet, while performing stucco removal with the use of a power grinder, on the rear wall of a residential apartment building . . . . While doing this work, the grinder jammed and kicked back causing plaintiff to lose his balance and fall, striking his head on the cement pavement below.

The "aluminum work platform" was a "ladder scaffold." The scaffold consisted of a Werner Taskmaster Aluminum Plank, Model 2320, twenty feet long by two feet wide, supported by two ladders.[1] Bossolina Construction owned the plank. Plaintiff and several other Bossolina Construction employees had loaded and transported it from Bossolina Construction's shop to the Mayfair jobsite before beginning work on the Project.

The plank had several warnings on it, including the following:

---

[1] According to Werner's undisputed statement of material facts, "[t]he plank was manufactured in 1990 by Old Ladder Co. f/k/a R.D. Werner Co., not moving defendant, Werner Co. (DE), which did not come into existence until 2007." This was not, however, the basis for the trial court's grant of partial summary judgment to Werner.

> Use safety belts or harnesses, lanyards and lifelines on all jobs which expose a worker to a fall of [six] or more feet, and which are NOT performed from a plank at least [eighteen] inches wide having guardrails on all open sides and are NOT fixed.

The scaffold plank had no guardrails. Plaintiff testified at his deposition that he read the warnings on the plank.

Plaintiff was not using fall protection equipment when he fell, because though there was a harness for his use, there was no place to tie it off, and he was going to use the ladder scaffold "for only that small area." He also testified the label on the scaffold did not really say at what "height you have to use the safety belt." He said he did not understand the fall protection equipment should be used even when the scaffold height was not above a building's first story.

Plaintiff and four other Bossolina Construction employees were working on the job site the day plaintiff fell. The parties dispute who was responsible for job safety and supervision. Plaintiff said he was supervising the site. He testified Bossolina Construction's principal, "Charlie" Bossolina, instructed the workers on what to do at the job, but on the day of the accident Bossolina was on vacation. He left plaintiff in charge of the crew, a responsibility that included ensuring not only that the

work was performed properly and safely, but also that the employees were using equipment properly.

Bossolina remembered things differently. When deposed, he said Sikorski Construction's principal, Michael Sikorski, was responsible for the Project. Asked to describe their relationship, Bossolina said Sikorski owned his own company. Sikorski did not work for Bossolina. Bossolina never employed him. Rather, Bossolina hired him as a subcontractor.

Bossolina did not enter into a written contract with Sikorski because he had "never done a contract with Mike Sikorski" before. According to Bossolina, there was no need for a contract, because they knew each other and did a lot of work together. He said he probably first spoke to Sikorski about the Project when he was estimating the job.

Asked what Mike Sikorski did for him, Bossolina responded that "[i]t could be anything. General contracting. That could be from foundation all the way to the roof cap. Anything in-between." Bossolina also testified Sikorski "was going to do the [P]roject. He was going to set it up and do the [P]roject." Bossolina made clear that from his perspective Sikorski was a subcontractor. Bossolina insisted Sikorski understood he was supposed to do the labor on the project. He also testified Sikorski obtained the permits for the Project.

6

Bossolina was away when the accident occurred. From what Sikorski later told him, Sikorski started the job either the week before the accident or during that week. Bossolina said he did not even know the project had started. In Bossolina's absence, Sikorski would direct the employees and had "full reign on picking and choosing what should be done on a particular day." Sikorski would supervise the crew. When supervising, Sikorski would at times do the labor, but rarely.

Bossolina paid Sikorski by a check and gave him a "1099" tax form. According to Bossolina, with the exception of the check and 1099, there was no paperwork between Bossolina Construction and Sikorski.

Sikorski contradicted Bossolina. During his deposition, Sikorski testified that Sikorski Construction was his "sales company," which used to be a sole proprietorship, but was now an "S-Corp." Sikorski was the company's sole officer. In 2012, when plaintiff's accident occurred, Sikorski Construction had no employees other than Sikorski.

According to Sikorski, he became employed as an outside sales person for Bossolina Construction in approximately 2002 or 2003. He was still employed in that capacity by Bossolina Construction as of the time of his deposition in May 2016. Sikorski testified he did certain limited supervision for Bossolina Construction. He

was compensated by way of an $11,000 per month sales draw. Other than operating Sikorski Construction and working for Bossolina Construction, Sikorski held no positions or employment with any other companies.

Sikorski denied ever working as a laborer for Charlie Bossolina. He claimed he had undergone a lumbar fusion in February 2012, the month before plaintiff's accident, and was still recovering in March. He was unable to drive due to his recuperation. He was in no condition to be doing physical labor. Due to the surgery and a death in his family, Sikorski was unable to participate in any way in the Project. Besides, the Project was what Sikorski termed a "Preferred Management" (PMI) construction job. Sikorski arranged no work for Bossolina to do for PMI.

Plaintiff retained the services of an expert in Human Factors to evaluate whether the scaffold plank was defective. The expert opined the scaffold plank was defectively designed because it did not include guardrails. The expert also opined the plank was defective because it did not include warnings that would come to the attention of users and alert them to the potential for serious injury if guardrails or fall protective devices were not used.

The trial court granted summary judgment to Sikorski Construction. The court found there was no evidence Sikorski Construction was ever at the Project site.

The trial court also granted summary judgment to Werner as to the warnings claim, concluding there was no duty to warn of open and obvious dangers. The court denied Werner's motion as to the design defect claim, which plaintiff later dismissed.

Appellate courts "review[] an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citations omitted). We "review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Ibid. (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c)). A trial court's determination that a party is entitled to summary judgment as a matter of law is not entitled to any "special deference," and is subject to de novo review. Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 415 (2016) (citation omitted).

We first address the order granting summary judgment to Sikorski Construction. The disputed issues of material fact include these: who was responsible for running the job and implementing safety measures, and, was the responsible party

either Sikorski or his company. Plaintiff, as the party opposing the motion, "must receive 'the benefit of all favorable evidence and inferences presented in the record.'" <u>State v. Quaker Valley Farms, LLC</u>, ___ N.J. ___, ___ (2018) (slip op. at 23) (citing <u>Murray v. Plainfield Rescue Squad</u>, 210 N.J. 581, 585 (2012)). Applying this standard, we conclude genuine issues of material fact precluded the grant of summary judgment to Sikorski Construction.

There is a major dispute about whether Sikorski worked at the Project. He says he did not, but Bossolina testified he subcontracted the project to Sikorski. Bossolina also testified Sikorski obtained the permits for the Project. Additionally, according to Bossolina, after he learned of plaintiff's accident, he spoke to Sikorski and Sikorski said he started the Project either the week of or the week before plaintiff's fall. Last, Bossolina testified he paid Sikorski and gave him a 1099.

To be sure, Sikorski's testimony contradicted Bossolina's testimony. Issues of credibility, however, are to be decided by the jury, not a judge evaluating a summary judgment motion. <u>Brill</u>, 142 N.J. at 540.

The trial court granted summary judgment to Sikorski Construction on the ground there was no evidence of Sikorski being on the project site and no evidence of it having any contract with

respect to the project. In doing so, the court noted Sikorski had not been named as an individual defendant. For several reasons, we disagree that these considerations were a basis for granting summary judgment.

First, Bossolina testified that his relationship with Sikorski was that Sikorski owned a company and that they did a lot of work together. Although Bossolina did not distinguish between himself and Bossolina Construction, nor Sikorski and Sikorski Constuction, his testimony could reasonably be construed as referring to their companies. For example, when Bossolina testified he subcontracted the job to Sikorski, he did not, individually, have a job to subcontract out. The contract for the Project was between the owner and Bossolini Construction. Thus, when he testified he subcontracted the Project to Sikorski, he likely meant Bossolina Construction subcontracted the job, and he may have meant — and a jury could have reasonably inferred — Bossolina Construction subcontracted the Project to Sikorski Construction.

Next, Sikorski testified he generally performed work either as an employee of Bossolina or an employee of Sikorski Construction, no one else. Bossolina denied Sikorski was ever an employee of Bossolina Construction. Thus, if Sikorski worked at

the Project, a reasonable inference is he did so as Sikorski Construction.

Last, it appears in the weeks leading up to plaintiff's accident Sikorski was a sole proprietorship using the name Sikorski Construction. Although the record does not clarify when Sikorski Construction became a corporation, at oral argument Sikorski's attorney appeared to concede Sikorski Construction was not a corporation, and the court intimated as much.

If such were the case, Sikorski and Sikorski Construction were indistinguishable as legal entities. "In a sole proprietorship, the business and its owner are one and the same." Burwell v. Hobby Lobby Stores, 134 S. Ct. 2751, 2797 (2014) (Ginsburg, J., dissenting). Thus, Sikorski could not avoid liability by using a name for his business when his business was a sole proprietorship. The court should either have permitted plaintiff to amend the pleadings or ultimately amended the pleadings itself to conform to the evidence. See R. 4:9-2.

In summary, unresolved issues of material fact precluded the grant of summary judgment to Sikorski Construction. The issues, among others, include: whether Sikorski or Sikorski Construction verbally agreed to supervise the Project's construction, and, if so, the scope of the supervisory responsibility; whether Sikorski worked on the project; and, if Sikorski worked on the Project,

A-0981-16T1

whether he worked as a Bossolina employee or as an employee or principal of his sole proprietorship. In view of these unresolved issues and the standard requiring the evidence to be construed in the light most favorable to plaintiff, we reverse the order of summary judgment for Sikorski Construction and remand the matter for trial.

We reach a different result as to the grant of summary judgment to Werner. Plaintiff's principal argument on appeal is that when the trial court considered the open and obvious nature of falling from an unguarded scaffold, the court failed to consider that the "open and obvious" defense is not available when the accident involves workplace equipment. We disagree.

The New Jersey Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11, provides that "[a] manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose." N.J.S.A. 2A:58C-2. Plaintiffs can prove a product is defective, that is, not reasonably fit, suitable or safe for its intended purpose, by establishing the product had a design, manufacturing, or warning defect. A plaintiff can establish such a defect by proving the product: "a. deviated from the design specifications, formulae, or performance standards of the

13                                                    A-0981-16T1

manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner." Ibid.

In product liability actions "for harm allegedly caused by a product that was designed in a defective manner," it is an absolute defense that:

> The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended.
>
> [N.J.S.A. 2A:58C-3(a)(2).]

The statute expressly states this defense "shall not apply to industrial machinery or other equipment used in the workplace." Ibid.

Plaintiff asserts the exception applies as well to product liability warning defect cases. Werner argues it does not. Previously, we have explained that though the statutory defense of "obvious danger" is:

> [E]xpressly unavailable as an absolute defense for industrial machinery under the design defect section of the [PLA], N.J.S.A. 2A:58C-3(a)(2), a different rule pertains in a failure to warn case. Nothing in the [PLA]

14                                                              A-0981-16T1

> or case law suggests that the obviousness of danger may not be considered as a factor to establish what is an "adequate warning" . . . or whether a breach of that duty could be a proximate cause of the accident.
>
> [<u>Fabian v. Minster Mach. Co., Inc.</u>, 258 N.J. Super. 261, 279 (App. Div. 1992); <u>accord</u>, <u>Grier v. Cochran Western Corp.</u>, 308 N.J. Super. 308, 323-24 (App. Div. 1998).]

We agree with the trial court that the danger of falling from a scaffold and sustaining serious injury is open and obvious. We further agree the open and obvious nature of the risk of falling from the scaffold and sustaining serious injury was a proper consideration in determining whether the warnings were adequate. The open and obvious nature of the danger would not have been an absolute defense to plaintiff's design-defect theory, but plaintiff dismissed that claim.

We note plaintiff did not dispute he read the warnings on the scaffold plank and knew there was fall protection equipment available. He testified to a number of reasons why he did not use fall protective equipment, one reason being there was nowhere to anchor it. If such equipment was unusable because there was nowhere to anchor it, then perhaps the only alternative was to use different scaffolding. That decision would have been appropriately made by whoever was supervising the Project.

Plaintiff's remaining arguments are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

For the foregoing reasons, we affirm the summary judgment order in favor of Werner but reverse the summary judgment in favor of Sikorski and remand for trial.

Affirmed in part, reversed in part, and remanded for trial. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0981-16T1